By the Court, Bronson, J.
It is said that Martin proves an express promise to pay for the keeping of the horses. If that were so, it would not aid the plaintiff in this action. This is not assumpsit, but an action on the case where the plaintiff seeks to recover on the ground of a lien. And besides, Martin *488 was not the agent of the plaintiff, and what the defendant said to him seems not to have been intended for the plaintiff, but for Sheldon, who had receipted the horses to the constable. The conversation was not communicated to the plaintiff, and he will never be able to make any thing out of it; (Stafford v. Bacon, 1 Hill, 532 ;) certainly not in this action.
The innkeeper is bound to receive and entertain travellers, and is answerable for the goods of the guest although they may be stolen or otherwise lost without any fault on his part. Like a common carrier, he is an insurer of the property, and nothing but the act of God or public enemies will excuse a loss. On account of this extraordinary liability the law gives the innkeeper a lien on the goods of the guest for the satisfaction of his reasonable charges. It was once held that he might detain the person of the guest, but that doctrine is now exploded, and the lien is confined to the goods. The inquiry then is, whether the plaintiff received and kept the horses as an innkeeper. In other words, was he bound to receive and take care of them, and would he have been answerable for the loss if the horses had been stolen without any negligence on his part 1 The lien and the liability must stand or fall together. Innkeepers cannot claim the one with any just expectation of escaping the other.
Tyler, who owned the property, was not a traveller, nor was he in any sense a guest in the plaintiff’s house; and I think it quite clear that the plaintiff was not bound to receive and take care of the horses. We are referred to the case of Peet v. McGraw, (25 Wend. 653,) to prove that it is not necessary to the lien, or the liability of the innkeeper, that the owner should be a guest. The case decides no such thing. It turned on the construction of the plea, and we thought the words of the plea equivalent to an averment that the owner was a guest. A single expression of the chief justice, which was not necessary to the decision of the cause, is separated from the context, and pressed into the plaintiff’s service. But neither the chief justice nor any other member of the court intended to say, that *489 either the lien or the liability could exist where the owner of the goods was not either actually or constructively the guest of the innkeeper. There must be such a relation; but it is not necessary to its existence that the owner of the goods should be actually infra hospitium at the time the loss happened, or the lien accrued. For example, if a traveller leave his horse at the inn, and then go out to dine or lodge with a friend, he does not thereby cease to be a guest, and the rights and liabilities of the parties remain the same as though the traveller had not left the inn. And if the owner leave the inn and go to another town, intending to be absent two or three days, it seems that the same rule holds good, so far as relates to property for the care and keeping of which the host is to receive a compensation; but it is otherwise in relation to inanimate property from which the host derives no advantage, and if that be stolen during such absence of the guest, the innkeeper will not be answerable. (Gelley v. Clerk, Cro. Jac. 188 ; Noy, 126, S. C. ; Yorke v. Grenaugh, 2 Ld. Raym. 866 ; 1 Salk. 388, S. C., by the name of York v. Grindstone ; Bac. Abr. Inns and Innkeepers, (C.) 5,7th Bond, ed.) The case of Mason v. Thompson, (9 Pick. 280,) goes still further. There the traveller never went to the inn, but stopped as a visiter with a friend, and sent her horse and carriage to the inn. After four days she sent for the property, and found that a part of it had been stolen; but still the innkeeper was held liable. This case rests on the dictum of Powell and Gould, Js. against the opinion of Lord Holt, in Yorke v. Grenaugh, (2 Ld. Raym. 866,) that “ if a man set his horse at an inn, though he lodge in another place, that makes him a guest, and the innkeeper is obliged to receive him [the horse;] for the innkeeper gains by the horse, and therefore makes the owner a guest, though he was absent.” But the decision turned on the construction of •the avowry, and the proper mode of pleading. The two judges held, “ that since the matter shewn makes it appear that he was & guest, it is enough, though it is not expressly averred that he was a .guest.” But Holt said : K This matter is but *490 evidence of it, that he was a guest, and is not traversable ; but guest or not, is the most material part of the avowry, and traversable ; and therefore there ought to be a positive averment that he was a guest.” This is not all. The two judges gave as the authority for their dictum the case of Robinson v. Walter, (Poph. Rep. 127.) The point there decided was, that the innkeeper had a lien on the plaintiff’s horse, although the animal was brought to the inn by one who took him wrongfully. And that is good law at this day, if the innkeeper have no notice of the wrong, and act honestly. (Johnson v. Hill, 3 Stark. R. 172.) He is bound to receive the guest, and cannot stop to inquire whether he is the right owner of the property he brings. But not one word was said in the case of Robinson v. Walter, ip support of the position that the owner or person who brings the property need not be a guest. The subject was not even mentioned, so far as appears by the report in Popham. But by the report of the same case in 3 Bulst. 269, it appears affirmatively that the wrongdoer who brought the horse to the inn actually became a guest, and afterwards went away leaving the horse behind. Now when a man, after he has actually become a guest and delivered his property to the host, goes away for a brief period leaving his goods behind him, the law is chargeable with no absurdity in considering him as still continuing a guest so far as relates to the rights and liabilities of the parties. And if one send his horse or his trunk in advance to the inn, saying he will soon be there himself, it may be that he should be deemed a guest from the tipie the property is taken in charge by the host. But when, as in Mason v. Thompson, the owner has never been at the inn, and never intends to go there as a guest, it seems to me little short of a downright absurdity to say, that in legal contemplation he is a guest. If our law givers had intended that the innkeeper should be answerable as such for every thing he received in charge, guest or no guest, they' would have said so. They would not have taken the roundabout mode of saying that he must answer for the goods of the guest, and that every *491 one is a guest who has goods in his hands. Now in this case Tyler, who owned the horses, never was the plaintiff’s guest, Nor was he a traveller or transient person. He was the plaintiff’s neighbor. In this respect the case differs from Mason v. Thompson, though I should feel no disposition to follow that decision if this difference did not exist. I think the extraordinary liability of the innkeeper does not attach until he actually has a guest, and without such liability the innkeeper, as such, has no lien on the goods. Whether he has a lien in any other character remains to be considered.
The right of lien has always been admitted where the party "was bound by law to receive the goods ; and in modern times the right has been extended so far that it may now be laid down as a general rule, that every bailee for hire who by his labor and skill has imparted an additional value to the goods, has a lien upon the property for his reasonable charges. This includes all such mechanics, tradesmen and laborers as receive property for the purpose of repairing, or otherwise improving its condition. But the rule does not extend to a livery stable keeper, for the reason that he only keeps the horse, without imparting any new value to the animal. And besides, he does not come within the policy of the law, which gives the lien for the benefit of trade. Upon the same reasons the agister of farmer who pastures the horses or cattle of another has no lien for their keeping, unless there be a special agreement to that effect. This doctrine was laid down in Chapman v. Allen, (Cro. Car. 271.) And in Yorke v. Grenaugh, (2 Ld. Raym. 868,) Lord Holt said, a livery stable keeper had no lien. (See the remarks of Lord Lyndhurst, C. B. upon this case in Judson v. Etheridge, 1 Cromp. & Mees. 743.) I am not aware that this rule has ever been departed from, though it has been suggested that it would be well enough to place the livery man on the same footing with other persons who bestow their labor and care upon the property entrusted to their keeping. (Coioen’s Tr. 299,2d ed.) But the question has recently undergone a good deal of discussion in England, and the result is *492 that the old cases remain unshaken, and it must now be regarded as the settled doctrine that agisters and livery stable keepers have no lien, unless there be a special contract to that effect. (Wallace v. Woodgate, 1 Car. & Payne, 575 ; Ry. & Moody, 193, S. C. ; Bevan v. Waters, 3 Car. & Payne, 520 ; Judson v. Etheridge, 1 Cromp. & Mees. 743 ; Jackson v. Cummins, 5 Mees. & Wels. 342. And see Jacobs v. Latour, 5 Bing. 130 ; 2 Moore Payne, 201, S. C. ; Saunderson v. Bell, 2 Mees. & Mees. 304 ; Scarfe v. Morgan, 4 id. 270.) It will be seen from the cases which have been mentioned, that a distinction, in relation to the question of lien, has been taken between the mere keeper and the trainer of a horse ; and it is said that the latter has a lien, because he has done something for the improvement of the animal. And in Judson v. Etheridge, it was suggested by Holland, B. that the doctrine might, perhaps, be extended to the case of a breaker who takes a young horse to-be broken, on the ground that he makes it a different animal from what it was before, and improves the animal by the application of labor and skill. On the same principle it has been held, that if a farmer or stable keeper receive a mare for the purpose of being covered by his stallion, he has a specific lien for the charge of covering. Whether these distinctions were well taken or not, they show that the courts have steadily adhered to the rule that one who merely provides food and takes the care of an animal, as an agister or livery stable keeper, has no lien except by contract.
There is a further reason why there can be no lien in these cases. When horses are kept at livery, the owner takes and uses them at pleasure, and the bailee only has a lien so long as he retains the uninterrupted possession. If the owner gets the-property into his hands without fraud, the lien is at an end, and it will not be revived by the return of the goods. (Bevan v. Waters, 3 Car. 4 Payne, 520 ; Jones v. Thurloe, 8 Mod. 172 ; Jones v. Pearle, 1 Str. 556 ; Sweet v. Pym, 1 East, 4.) So in the case.of milch- cows, the agister has- no lien, for the reason that the owner has occasional possession for the purpose *493 of milking them. (Jackson v. Cummins, 5 Mees. & Wels. 342 ; Cross on Lien, 25,36,332.) Now here, from the nature of the case, the plaintiff was not to have the continued and exclusive’ possession of the horses, but Tyler was at liberty to take and use them when he pleased, and he did in. fact take them at' pleasure. The witness says he does not know that the plaintiff was at home when Tyler took the horses, but there was no pretence that they were taken by fraud, or against the will of the plaintiff.
The plaintiff cannot stand upon any better footing than a livery stable keeper, and as such he had no lien.
Judgment, affirmed.